IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| TONY KIDD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 6:17-cv-1180-TMP |
| | ) | |
| JASPER, City of; DAVID | ) | |
| O'MARY, Mayor, in his individual | ) | |
| capacity; and JOE MATTHEWS, | ) | |
| Parks & Recreation Manager, | ) | |
| in his individual capacity; | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court on the motions to dismiss filed by defendants Mayor David O'Mary, in his individual capacity; the City of Jasper ("the City"); and Joe Matthews, in his individual capacity. (Docs. 8, 24, 30, 31). The motions have been fully briefed. The parties have consented to the jurisdiction of the undersigned magistrate judge.

## STANDARD OF REVIEW

Because the instant motions to dismiss are premised upon the pleadings in this case and public records, the motions are evaluated under Federal Rule of Civil Procedure 12(b)(6) because the defendants have asserted that the plaintiff failed to

state a claim upon which relief may be granted. On a motion to dismiss, the court must accept as true all of the well-pleaded facts alleged in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-51, 173 L. Ed. 2d 868 (2009). Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Liberal notice pleading standards embodied in Rule 8(a) "do not require that a plaintiff specifically plead every element of a cause of action," Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001), or set out in precise detail the specific facts upon which he bases his claim. The complaint must only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Id. (quoting In re Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)).

The Supreme Court raised the threshold for a sufficient pleading in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1965 (2007), in which it rejected the standard from Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), that any "conceivable" set of facts supporting relief is sufficient to withstand a motion to dismiss. The threshold of plausibility is met where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

To withstand scrutiny under Rule 12(b)(6) a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and that will thus "nudge [his] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The Court in Iqbal explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557, 127 S. Ct. 1955 (brackets omitted).

Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing and quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1965 (2007)). The Eleventh Circuit Court of Appeals has explained that the principles set forth in Twombly and Iqbal require the complaint to set forth

sufficient facts that "raise a right to relief above the speculative level."   Speaker

v. U.S. Dep't of Health and Human Servs. Centers for Disease Control and

Prevention, 623 F.3d 1371, 1380 (11th Cir. 2010).

Compliance with this pleading standard is the key that opens the door to

discovery.   A plaintiff whose complaint falls short of the plausibility standard

may not resort to discovery to shore up the complaint.   As the Southern District of

Alabama has explained:

> The rule in this Circuit is that "discovery *follows* the filing of a
> well-pleaded complaint. It is not a device to enable the plaintiff to
> make a case when his complaint has failed to state a claim."   Carter
> v. DeKalb County, Ga., 521 Fed. Appx. 725, 728 (11th Cir. June 4,
> 2013) (citation and internal quotation marks omitted).   Indeed, the
> Supreme Court has stressed that the Federal Rules of Civil Procedure
> do "not unlock the doors of discovery for a plaintiff armed with
> nothing more than conclusions," and that where a "respondent's
> complaint is deficient under Rule 8, he is not entitled to discovery,
> cabined or otherwise."   Iqbal, 556 U.S. at 678-79 & 686.   Myriad
> authorities have expressly rejected plaintiffs' requests for initial
> discovery prior to evaluating a pleading under the standards
> established by Iqbal and Twombly.

Brannan for Estate of Goodman v. West, No. CV 17-0493-WS-M, 2018 WL

1440835, at *4 (S.D. Ala. Mar. 22, 2018).   Thus, contrary to the plaintiff's

argument, the sufficiency of the complaint under Rule 8 and Rule 12(b)(6), must

be weighed on the basis of the facts pleaded in the complaint, without the benefit

of discovery.    Access to discovery occurs only if the complaint sufficiently pleads a plausible claim under <u>Twomby</u> and <u>Iqbal</u>.

## <u>FACTUAL ALLEGATIONS</u>

Turning to the well-pleaded facts of the complaint, while disregarding mere conclusions with no factual support, the following facts are accepted as true for purposes of these motions.

This action arises from the termination of plaintiff's employment with the City.   The plaintiff alleges that he is an African American who worked in a temporary or part-time position with the City for more than three years.    IN 2016, he was hired as a full-time employee in probationary status.   The complaint does not describe the type of work the plaintiff performed, the department in which the plaintiff worked, or the person who ultimately made the decision to fire the plaintiff.   He never received any disciplinary action or notice during his employment with the City, but on or about June 20, 2016, the last day before the plaintiff would have completed his probationary period, his employment was terminated.   No reason for the termination was given.   He asserts that the City failed to follow its progressive disciplinary policy, and he contends that white employees were hired to full-time positions after his job was terminated.   He does not allege, however, that the white employees were hired for positions comparable

to his, or even in the same department in which he had worked.[1]   He alleges that the City has a "pattern and practice" of hiring African-American employees for temporary or part-time employment, while hiring white employees to permanent, full-time jobs.   The complaint does not offer any factual allegations describing such an employment practice or pattern.

Following his termination, the plaintiff applied for unemployment compensation.   Responding to a request for information from the State of Alabama Department of Labor Unemployment Compensation Division, the City acknowledged that, "Due to documentation not being obtained from department we had no explanation or justification for termination to submit to UC."

The plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and timely filed this action after receiving a Right to Sue letter.

## PROCEDURAL HISTORY

The plaintiff's complaint alleges as Count One that he was subjected to discrimination by the individual defendants (O'Mary and Matthews) on account of his race, in violation of 42 U.S.C. §§1981 and 1983.   More specifically, the

---

[1]   Although in his briefs opposing the motions to dismiss by the City and Matthews, the plaintiff argues that "two white employees… replaced him after his termination" (docs. 35, 36), his actual complaint alleges only that, "Since Kidd's termination, upon information and belief, two white employees have been hired to full-time permanent positions."   (Doc.1 at ¶ 10).

plaintiff asserts that O'Mary and Matthews "deprive[d] Plaintiff of the same right to make and enforce contracts as is enjoyed by similarly-situated white persons" and "denied [him] the right to permanent employment with the defendant." (Doc. 1, p. 8). In Count Two, the plaintiff alleges that the City violated Title VII by terminating his employment "because of his race." (Doc. 1, p. 10). Count Three asserts that "the Defendants failed to notify the plaintiff of any deficiency in his job performance and breached their contract with the plaintiff, which required them to follow a progressive disciplinary policy." (Doc. 1, p. 12).

Defendant O'Mary filed his motion to dismiss (doc. 8), seeking dismissal of all of plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) on grounds the complaint does not plead sufficient facts to plausibly establish plaintiff's claims and he is entitled to qualified immunity. Mayor O'Mary amended his motion (doc. 24) to allege further that he was not the mayor or an official with the City during the relevant time period.[2] Defendants Matthews and the City also seek dismissal pursuant to Rule 12(b)(6), asserting that the complaint fails to adequately plead a claim of employment discrimination or breach of

---

[2] The court declines to consider the materials offered by Mayor O'Mary beyond the pleadings in this case. Consideration of the materials would require the court to convert the instant motion to dismiss to a motion for summary judgment, but the plaintiff has not had a fair opportunity to conduct discovery related to the materials, delaying the resolution of such a motion.

contract. Matthews further asserts that he is entitled to qualified immunity from any claim arising under § 1983.

## **DISCUSSION**

### **A.  Mayor O'Mary's Motion to Dismiss**

The motion filed by O'Mary, as amended, seeks dismissal of all claims against him on grounds that (1) the complaint does not plead sufficient facts to show a plausible claim against O'Mary, (2) the defendant is entitled to qualified immunity, and (3) he cannot be liable for any of the plaintiff's claims because he had "no employment or managerial relationship" with the City at any time between the date the plaintiff asserts he was hired in 2013 and the date his employment was terminated in June of 2016.

### 1.  *Failure to Plead a Plausible Claim*

In his original motion to dismiss, Mayor O'Mary argued that the plaintiff's complaint does not plead sufficient factual matter to state a plausible claim against him under either § 1981, § 1983, or state contract law.   Title 42 U.S.C. § 1981 prohibits racial discrimination in the making and performance of public and private contracts, including employment contracts.   See Simpson v. State of Alabama Dep't of Human Resources, No. 4:13-CV-01450-SGC, 2017 WL 514056, at \*6 (N.D. Ala. Feb. 8, 2017) (citing Ferrill v. Parker Group, Inc., 168 F.3d 468, 471

(11th Cir. 1999)). Title 42 U.S.C. § 1983 provides a civil cause of action to anyone deprived of federal constitutional or civil rights by another acting under color of state law, including the right to equal protection in public employment. See Potter v. Williford, 712 F. App'x 953, 954 (11th Cir. 2017) ("The Equal Protection Clause right to be free from race discrimination in public employment is clearly established") (citing Smith v. Lomax, 45 F.3d 402, 407 (11th Cir. 1995)). Likewise, § 1983 provides "the sole cause of action against state actors for violations of § 1981…." Simpson v. State of Alabama Dep't of Human Resources, No. 4:13-CV-01450-SGC, 2017 WL 514056, at *6 (N.D. Ala. Feb. 8, 2017) (citing Butts v. County of Volusia, 222 F.3d 891, 892 (11th Cir. 2000)). The analysis of race discrimination claims in public employment under § 1983 and the Equal Protection clause utilize the same framework as race discrimination claims under Title VII and § 1981. The plaintiff may establish a *prima facie* showing of discrimination by showing (1) that he is a member of a protected class, (2) that he was qualified for the job, (3) that he was terminated from the job, and (4) that a person not in his protected class replaced him or the position remained vacant. Potter, at 954.

In this case, the plaintiff has sued Mayor O'Mary in his *personal* capacity for terminating plaintiff's probationary employment with the City of Jasper.

Because a cause of action under § 1983 is the "sole cause of action against state actors for violations of § 1981," Butts v. County of Volusia, 222 F.3d 891, 892 (11th Cir. 2000), the plaintiff's separate and distinct claim under § 1981 must be dismissed. His remedy, if at all, against Mayor O'Mary personally for public employment race discrimination lies only under § 1983. Cf. Groce v. Franklin Cty. Comm'n, No. 3:13-CV-01769-HGD, 2014 WL 3543700, at *4 (N.D. Ala. July 17, 2014) (dismissing § 1981 claims against individual defendants).

As mentioned, a § 1983 claim for public employment discrimination based on race can be grounded on either or both the statutory rights embodied in § 1981 or the Equal Protection clause of the Fourteenth Amendment. In any event, the same analytical framework employed under Title VII is used for purposes of § 1983 as well. In pleading a claim, the plaintiff must set forth enough factual material, not mere legal conclusions, to state an employment discrimination that is plausible on its face. Stated another way, the factual allegations must be enough to raise the claim "above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); see Heard v. Hannah, 51 F. Supp. 3d 1129, 1137 (N.D. Ala. 2014). The complaint's "'factual content [must allow] the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged.'"   <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

The instant complaint simply fails to allege facts enough to show the Mayor O'Mary acted with the discriminatory animus necessary for a claim under § 1983. After alleging that he worked for the City for three and a half years as a temporary, part-time employee, he was hired as a full-time permanent employee, albeit for an initial probationary period.   The day before his probationary period was to end, the plaintiff alleges, his employment "was terminated by the defendants."   (Doc. 1, ¶¶ 6, 9 ).   He does not allege that any particular defendant made the termination decision, but that all did.   Nonetheless, he does not allege facts indicating a discriminatory animus.   Although he alleges that two white employees were hired by the City after his termination, he does not identify them or the positions to which they were hired.   He certainly does not allege that they were hired to fill his position or to replace him.   The plaintiff alleges "on information and belief" that the City had a pattern and practice of hiring black employees to temporary, part-time positions only, but hiring white employees to permanent, full-time positions.   Again, however, he sets for no facts showing this purported pattern, much less that Mayor O'Mary was aware of or approved it.   These factual allegations simply fail to raise this claim "above the speculative level."   The court

cannot infer from these allegations that his termination was the product of intentional racial discrimination. Without some factual assertions showing that the alleged pattern of discriminatory hiring by the City actually exists—allegations identifying African American employees hired to temporary positions while comparable white employees were hired to permanent positions—the court can only speculate as to the reason for the plaintiff's termination. It may have been racially motivated or not.

It is crucial to remember that the plaintiff has attempted to sue Mayor O'Mary *personally* for the termination of his employment. To do so, he must allege facts sufficient to allow a plausible inference that Mayor O'Mary himself actively participated in the discriminatory scheme and that it was the motivation behind the plaintiff's termination. The complaint simply does not allege sufficient facts to plausibly show that Mayor O'Mary was motivated by a discriminatory animus with respect to whatever he role was in the plaintiff's termination of employment. See Faulk v. City of Orlando, 731 F. 2d 787, 790 (11th Cir. 1984) ("Nowhere in his pleadings did appellant allege any action by the individual defendants based on appellant's race which could be characterized as purposeful discrimination violative of Title VII or section 1981."). Whether framed as a § 1981 claim or an Equal Protection claim, the § 1983 claim asserted

here against Mayor O'Mary simply does not establish the requisite *intentional* discrimination.

### 2. *Qualified Immunity*

Mayor O'Mary also argues that he is entitled to qualified immunity with respect to the § 1983 claim. To be entitled to qualified immunity the public officer invoking it must show that he performed a "discretionary function" with respect to the complained of decision. If so, the officer is shield by qualified immunity so long as his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known." See <u>Sherrod v. Johnson</u>, 667 F.3d 1359, 1363 (11th Cir. 2012) (per curiam); <u>Potter v. Williford</u>, 712 F. App'x 953, 954 (11th Cir. 2017). Assuming for the sake of argument that the plaintiff has sufficiently pleaded a claim of racial discrimination against Mayor O'Mary personally, he is entitled to qualified immunity because it is clearly established that race discrimination in public employment is illegal. See <u>Potter v. Williford</u>, 712 F. App'x 953, 954 (11th Cir. 2017). The court reiterates its conclusion, however, that the plaintiff's complaint does not sufficiently plead a plausible § 1983 claim against Mayor O'Mary personally for race discrimination related to the termination of plaintiff's

employment. His motion to dismiss the complaint on the ground of qualified immunity is meritless.

### 3. *State Breach of Contract*

The plaintiff alleges that Mayor O'Mary personally breached an employment contract with the plaintiff. Setting aside the fact that Mayor O'Mary would not have been in privity of contract with the plaintiff with respect to the plaintiff's employment with the City, the plaintiff admits that he was terminated while he was a probationary employee. As such, no enforceable contract of employment existed between him and the City, or if one did, it was terminable at will by the City. In either event, Mayor O'Mary would not be answerable in contract as he was not a party to any such employment contract. Mayor O'Mary's motion to dismiss the state breach of contract claim is due to be granted.

### B.  Matthews' Motion to Dismiss

The plaintiff asserts a race discrimination claim against Matthews pursuant to 42 U.S.C. § 1981, which provides that "all citizens shall have the same right to 'make and enforce contracts.'" See Brown v. American Honda Motor Co., 939 F.2d 946, 949 (11th Cir. 1991). Section 1981 claims against public employers are

enforced through an action brought pursuant to § 1983.[3]  <u>Jett v. Dallas Ind.</u>

<u>School Dist.</u>, 491 U.S. 701, 731, 109 S. Ct. 2702, 2721, 105 L. Ed. 2d 598 (1989).

The plaintiff alleges that he was subjected to racial discrimination in violation of

§ 1981 and the Equal Protection Clause, and seeks relief pursuant to § 1983 against

Matthews and O'Mary.[4]

Racial discrimination claims are analyzed under the same framework,

whether brought under Title VII, § 1981, or § 1983.  <u>See</u> <u>Abel v. Dubberly</u>, 210

F.3d 1334, 1338 (11th Cir. 2000) (holding that Title VII and § 1983 claims have

the same elements where the claims are based on the same set of facts); <u>Stallworth</u>

<u>v. Shuler</u>, 777 F.2d 1431, 1433 (11th Cir.1985) (stating that "[w]here, as here, a

plaintiff predicates liability under Title VII on disparate treatment and also claims

liability under sections 1981 and 1983, the legal elements of the claims are

identical ... [and] we need not discuss plaintiff's Title VII claims separately from

---

[3]      Although it appears that the plaintiff was never more than an at-will employee under
Alabama law, the concept of an employment contract that can give rise to liability under § 1981
has been construed very broadly to include simply the agreement that an employee will be paid
for his work.   <u>See, e.g.</u>, <u>Lane v. Ogden Entertainment, Inc.</u>, 13 F. Supp. 2d 1261, 1272 (M.D.
Ala. 1998).   However, the contractual relationship that is sufficient to support a Section 1981
claim is not necessarily sufficient to support a state-law breach-of-contract claim or to provide a
plaintiff with a property interest in his employment.

[4]      The complaint clearly alleges the § 1981 claim only against the individual defendants, and
only against them in their individual capacities.   (Doc. 1, p. 8).   The claims against O'Mary are
due to be dismissed for the reasons set forth *supra*.

his Section 1981 and Section 1983 claims."); <u>Turnes v. AmSouth Bank</u>, 36 F.3d 1057, 1060 (11th Cir. 1994) (The <u>McDonnell Douglas</u> analysis that is used to prove race discrimination under Title VII also is the appropriate model to evaluate § 1981 claims.).

Matthews seeks dismissal of the claim asserted against him under §§ 1981 and 1983 on the basis that the plaintiff has not alleged any facts that indicate that Matthews was a decision-maker in the alleged racial discrimination, and because any such claim is barred by the doctrine of qualified immunity.  In addition, Matthews seeks dismissal of any breach-of-contract claim, citing a failure to allege the existence of any valid contract between Matthews and the plaintiff.

The plaintiff's claim arising under § 1981 is due to be dismissed, most notably because the plaintiff has not alleged any conduct that would support an inference that Matthews engaged in any intentional discrimination, actionable through § 1983.   The Eleventh Circuit Court of Appeals determined in <u>Jackson v. BellSouth Telecommunications</u>, 372 F.3d 1250 (11th Cir. 2004), that a complaint that "failed to set forth any facts that would support an inference that the plaintiff's employer had acted with the requisite intent" was "wholly conclusory" and insufficient to meet even the more generous notice pleading standard in effect before <u>Twombly</u> and <u>Iqbal</u>.   372 F.3d at 1271.   In <u>Jackson</u>, the court noted that a

plaintiff alleging § 1981 race discrimination "must allege facts establishing: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute."   372 F.3d at 1270 (citing Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1235 (11th Cir. 2000)). The Eleventh Circuit has similarly stated that a complaint in a § 1983 case must, after Iqbal, "'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" Randall v. Scott, 610 F.3d 701, 716 n. 2 (11th Cir. 2010) (citations omitted).

In this case, the complaint fails to allege any conduct by Matthews at all, except to allege that he was a supervisor.   The complaint identifies Matthews as Parks and Recreation Manager, but later refers to him as Manager of the Street and Sanitation Department for the City, and states that the plaintiff worked "under the supervision" of Matthews.   The plaintiff does not allege in the complaint (which is the only document relevant for purposes of the Rule 12(b)(6) motion) that Matthews played any role in his termination.[5]   The Eleventh Circuit Court of

---

[5]   Even in the argument in opposition to the motion to dismiss, plaintiff merely asserts that he "believed that Joe Matthews was his supervisor and was the person responsible for recommending and ultimately terminating Kidd's employment" and that he "failed to follow the City's progressive discipline policy or document any reason for Kidd's termination."   (Doc. 36, p. 2).   These "beliefs," however, are not set forth in the complaint.

Appeals has stated that such conclusory allegations of discrimination are subject to dismissal where no individual defendant is accused of any specific wrongful conduct. Faulk v. City of Orlando, 731 F. 2d 787, 790 (11th Cir. 1984) ("Nowhere in his pleadings did appellant allege any action by the individual defendants based on appellant's race which could be characterized as purposeful discrimination violative of Title VII or section 1981.")[6] Similarly, the complaint in this case does not allege that the plaintiff's constitutional rights were violated by Matthews.[7] More specifically, because the plaintiff has failed to allege any racial animus or any facts that would support an inference of such intentional discrimination, Matthews cannot be liable in his individual capacity under § 1981

---

[6] The plaintiff in Faulk appeared *pro se* and his complaint was entitled to be construed liberally; even so, his complaint specifically alleged that he was white, he was terminated after being involved in accidents, and that African American employees with similar accident records were treated differently. Because of these factual allegations, his claim against the City (as opposed to claims against individuals defendants) was sufficient to survive the defendants' motion to dismiss. 731 F.2d at 788-791. The plaintiff in the instant case is represented by counsel and is held to a more stringent standard. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972).

[7] Plaintiff has not, and could not, assert a procedural due process claim because he was admittedly a probationary employee and thus had no right to any process prior to termination, as would a tenured employee. See, e.g., McKinney v. Pate, 20 F.3d 1550, 1559-60 (11th Cir. 1994); Dejarnett v. Willis, 976 F. Supp. 2d 1271, 1293 (M.D. Ala. 2013). The § 1983 claim is due to be dismissed for the additional reason that plaintiff has not alleged that he had a property or liberty interest in the position. Insofar as he bases his § 1983 claim on the Equal Protection clause, he has not alleged facts to allow a plausible inference that Matthews acted with a racial discriminatory animus.

or § 1983, and the motion to dismiss the claims against Matthews is therefore due to be granted.[8]

Matthews' motion is due to be granted for the additional reason that the complaint is devoid of any facts that support a conclusion that similarly situated employees who were not African American were treated more favorably. The appellate court in <u>Jackson</u> further held that "the wholly unsupported charge that the . . . defendants acted differently in cases not involving a minority plaintiff, even if it were supported by some specific facts or examples, is not sufficient to state a claim" for race discrimination absent some factual allegations that support an

---

[8] Although the plaintiff asserts in response to the motions to dismiss that he has not been able to engage in discovery, that argument is unavailing in challenging a Rule 12 motion, as opposed to a Rule 56 motion for summary judgment. <u>See, e.g.</u>, Chudasama v. Mazda Mtr. Corp., 123 F.3d 1353 (11th Cir. 1997)("Facial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should, however, be resolved before discovery begins. Such a dispute always presents a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true."). Although <u>Chudasama</u> has been criticized and limited over time, it remains axiomatic that courts need not "allow the plaintiffs to make their case through discovery even though the pleading almost certainly failed to state a claim." <u>Jones v. Bank of Amer. Corp.</u>, 2013 WL 5657700 (M.D. Ga. Oct. 15, 2013). <u>See also</u> Inman v. Amer. Paramount Fin., 517 Fed. App'x 744, 748-49 (11th Cir. 2013) (affirming order granting motion to dismiss and noting that arguing a lack of discovery is "misguided" because pleading standards apply before the time for discovery begins). It is clear that a ruling on a motion to dismiss is especially urgent where there exists the possibility of qualified immunity. In this case, plaintiff has simply alleged that his claims of racial discrimination are "impossible to prove at the pleading stage without benefit of discovery." (Doc. 36, p. 3). As noted above in text, the Supreme Court made clear in <u>Twombly</u> and <u>Iqbal</u> that pleading a sufficiently plausible claim in the complaint is the key to opening the door to discovery. The plaintiff's argument in opposition instead relies upon Rule 56, which is not at issue here. (Doc. 36, p. 7).

inference that the "alleged comparators are similarly situated."    Jackson, 372 F.3d at 1273.    In this case, the plaintiff simply alleges that "upon information and belief, two white employees have been hired to full-time permanent positions" since his termination.    (Doc. 1, para. 10).    There is no factual allegation in the complaint that provides information regarding what duties the plaintiff performed, what full-time permanent job the plaintiff alleges he was terminated from, or what job the white employees were hired to fill.    The court is not inclined to make the leap that persons hired as full-time employees to accounting positions, for example, are "similar" to persons working in full-time positions as truck drivers. In this case, there is no factual allegation as to whether the plaintiff was, for example, an accountant or a truck driver, and there is no allegation describing the full-time positions that were "believed" to be filled by white employees. Accordingly, the complaint does not sufficiently state that he was treated differently from employees of another race, and the motion to dismiss filed by Matthews is due to be granted for this additional reason.    Likewise, because there is no viable claim asserted against Matthews, his assertion of qualified immunity need not be discussed.

## C. The City's Motion to Dismiss

### 1. Title VII

The plaintiff asserts that the City discriminated against him on the basis of his race.[9]   As discussed *supra*, the threadbare complaint merely asserts that the plaintiff was fired from a probationary full-time position without any reason and that white workers were hired into unidentified full-time positions.   The City argues that the plaintiff has failed to state a claim under Title VII because the complaint does not contain any plausible allegations of racial discrimination.

The court agrees that the allegations of the complaint—conclusory assertions that he was fired for no reason, and that, since his firing, "upon information and belief, two white employees have been hired to full-time permanent positions"—is insufficient to allege racial discrimination and to assert that there exists a comparator who could be deemed "similarly situated."   As discussed *supra*, the allegations of the plaintiff's complaint fail to meet the standard set forth in Twombly and Iqbal.   Because the plaintiff has failed to offer enough factual allegations to properly allege a *prima facie* case of Title VII discrimination, the City's motion to dismiss the Title VII claim also is due to be granted.

---

[9]     The plaintiff concedes that his Title VII claim is viable only against the City, which was his employer.

2.  Breach of Contract

The City next asserts that the plaintiff's breach-of-contract claim is due to be dismissed as insufficiently pleaded.  Plaintiff has admitted that he was a probationary employee, and thus does not allege that he had an employment contract.  The plaintiff's broad assertion that the City had a progressive disciplinary policy that it failed to follow before he was terminated is simply not sufficient to demonstrate that a contract existed between the City and the plaintiff. Without some specific factual allegation from which the court can infer that a valid contract existed, the plaintiff must be viewed as an at-will employee under Alabama law, who thus was subject to dismissal at any time and for any reason. See, e.g., Wyatt v. BellSouth, Inc., 998 F. Supp. 1303, 1308-09 (M.D. Ala. 1998) (finding that a progressive discipline policy is not an employment contract unless it is set forth in a handbook that is communicated to the employee and accepted by the employee).  In this case, the plaintiff has not sufficiently alleged that such a policy was provided to him or accepted, or even that such a policy exists at all; he alleges it exists only on "information and belief."  Accordingly, the motion to dismiss the breach-of-contract claim against all defendants is due to be granted.

## CONCLUSION

Based upon the foregoing, the motion to dismiss and the amended motion to dismiss filed by defendant O'Mary (docs. 8, 24) are due to be granted and all claims against O'Mary are due to be dismissed with prejudice. The motion filed by Matthews (doc. 31) also is due to be granted, and all claims against Matthews are due to be dismissed with prejudice. The motion filed by the City (doc. 30) is due to be granted and all claims against the City are due to be dismissed with prejudice.

A separate order will be entered dismissing the claims as described herein; however, the plaintiff will be given fifteen (15) days in which to file an amended complaint to allege, consistent with Rule 11, such additional facts and claims as may be appropriate .

DONE this 8th day of June, 2018.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE